UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

DORIAN JACKSON,

        Petitioner,

           v.                        CAUSE NO. 3:17-CV-347-RLM-MGG

WARDEN,

        Respondent.

## OPINION AND ORDER

Dorian Jackson, a prisoner without a lawyer, filed an amended habeas corpus petition to challenge his convictions for dealing in a narcotic drug and marijuana possession under Case No. 20C01-1104-FA-9. Following a jury trial, on September 21, 2012, the Elkhart Circuit Court sentenced him to fifty-two years of incarceration.

## FACTUAL BACKGROUND

In deciding this habeas petition, the court must presume the facts set forth by the state courts are correct unless they are rebutted with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The Indiana Court of Appeals summarized the evidence presented at trial:

> Elkhart County Sheriff's Undercover Officer 193 ("UC 193"), a member of the Interdiction and Covert Enforcement Unit (the "ICE Unit"), a countywide drug task force for Elkhart County, received information that two cooperating sources wanted to work together to identify and target their source who was identified as Dorian Stephens residing in the Overlook Apartments in Elkhart. On March 14, 2011, UC 193 and other officers met with Cooperating Sources 11–005 ("CS 11–005") and 11–006 ("CS 11–006"). The police searched CS 11–005 and CS 11–006

and CS 11–006's vehicle. CS 11–005 placed a phone call to Stephens advising that they were going to be on their way for a purchase. After twenty or thirty minutes, Stephens called back and said that he was ready to meet and directed them to drive to the playground area of Overlook Apartments.

UC 193 accompanied the cooperating sources in CS 11–006's vehicle to the Overlook Apartments. Shortly after arriving, a white Chevrolet Suburban approached them and stopped, and the cooperating sources recognized the driver as Stephens. Jackson, Stephens' son, exited the Suburban, entered CS 11–006's vehicle, received money from CS 11–005, and gave heroin to CS 11–005. After a brief conversation, Jackson exited the vehicle.

On March 29, 2011, CS 11–005 called Jackson, and Jackson instructed him to go to a different location. Prior to the buy, the cooperating sources and CS 11–006's vehicle were searched. CS 11–006 drove CS 11–005 and UC 193 to the location, and Jackson entered the vehicle. CS 11–005 handed Jackson money, and Jackson handed him heroin.

The police observed Jackson in a white Dodge Stratus on other buys and during surveillance. The cooperating sources had told police that they believed that the Stratus was used to go to Chicago to retrieve more heroin. Without a search warrant, Undercover Officer 8621 placed a GPS device on the Stratus. The GPS device was used to assist with visual surveillance and to determine that the Stratus had gone to Chicago and was traveling back to the Elkhart area on March 30, 2011. Once the police had observed that the Stratus was going to Chicago, they decided that a traffic stop would be initiated, if possible, when the Stratus returned to Elkhart.

Elkhart County Sheriff's Detective Jeremy Stout positioned his vehicle on County Road 6 and observed the tracking device on his computer and that the "GPS unit was indicating that the vehicle on which the device was placed was traveling eastbound on Cleveland Road, which was also County Road 6." Detective Stout did not see the vehicle until its approach of Ash Road but knew of its location because of the GPS. Detective Stout was specifically planning to arrest Jackson, was not just performing traffic control, and was aware of the location of the Stratus because of the GPS tracking. The driver of the Stratus stopped at Ash Road on County Road 6, activated the turn signal, and turned south. Based upon the driver's failure to signal 200 feet prior to making a turn, Detective Stout initiated a traffic stop and observed that Jackson was the driver. Detective Stout asked Jackson to step out of the vehicle and

noticed that Jackson's belt was undone, his pants were hanging down, and he was attempting to pull up his pants as he was stepping out of the vehicle. Detective Stout arrested Jackson, searched him, and discovered a baggie of heroin and a baggie of marijuana in Jackson's boxer briefs.

On April 4, 2011, the State charged Jackson with: Count I, dealing in a narcotic drug as a class A felony; Count II, dealing in a narcotic drug as a class B felony; Count III, dealing in a narcotic drug as a class B felony; Count IV, dealing in a narcotic drug as a class B felony; and Count V, possession of marijuana as a class A misdemeanor.

* * *

The State moved to dismiss Count III, and the court granted the motion. During the bench trial, Jackson's counsel objected at various points based upon the same reasons raised in the motion to suppress, and the court overruled the objections. The court found Jackson guilty of Counts I, II, IV, and V, and sentenced him to thirty-seven years with four years suspended for Count I, possession of a narcotic drug as a class A felony, fifteen years for Count II, dealing in a narcotic drug as a class B felony, fifteen years for Count IV, dealing in a narcotic drug as a class B felony, and one year for Count V, possession of marijuana as a class A misdemeanor. The court ordered that the sentence imposed under Count V be served concurrent with the sentence imposed under Count I and that the sentences for Counts II and IV be served concurrent with each other but consecutive to Count I. Thus, the court sentenced Jackson to an aggregate sentence of fifty-two years with four years suspended.

ECF 40-5 at 2-6; Jackson v. State, 996 N.E.2d 378 (Ind. App. 2013).

In the amended petition, Mr. Jackson argues that trial counsel provided ineffective assistance by failing to investigate the circumstances of how the GPS device was placed on his vehicle and by failing to properly object to the GPS device search under Article I, Section 11 of the Indiana Constitution. He also argues that appellate counsel provided ineffective assistance by failing to argue that the trial court unreasonably imposed consecutive sentences on crimes that directly resulted from controlled buys.

Mr. Jackson also argues that he is entitled to habeas relief because the State courts declined to authorize subpoenas to obtain testimony regarding the circumstances of the GPS device placement on post-conviction review. Because there is no constitutional right to post-conviction proceedings, the claim that Mr. Jackson was denied discovery on post-conviction review doesn't present a cognizable ground for habeas relief. See Flores-Ramirez v. Foster, 811 F.3d 861, 866 (7th Cir. 2016) ("It is well established that the Constitution does not guarantee any postconviction process, much less specific rights during a postconviction hearing.").

## STANDARD OF REVIEW

"Federal habeas review . . . exists as a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." Woods v. Donald, 135 S.Ct. 1372, 1376 (2015) (quotations and citation omitted).

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

> [This] standard is intentionally difficult to meet. We have explained that clearly established Federal law for purposes of §2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions. And an

unreasonable application of those holdings must be objectively
unreasonable, not merely wrong; even clear error will not suffice. To
satisfy this high bar, a habeas petitioner is required to show that the
state court's ruling on the claim being presented in federal court was so
lacking in justification that there was an error well understood and
comprehended in existing law beyond any possibility for fairminded
disagreement.

Woods v. Donald, 135 S. Ct. at 1376 (quotation marks and citations omitted).

Criminal defendants are entitled to a fair trial but not a perfect one. Rose v. Clark,

478 U.S. 570, 579 (1986). To warrant relief, a state court's decision must be more than

incorrect or erroneous; it must be objectively unreasonable. Wiggins v. Smith, 539

U.S. 510, 520 (2003). "A state court's determination that a claim lacks merit precludes

federal habeas relief so long as fairminded jurists could disagree on the correctness

of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quotation

marks omitted).


## DISCUSSION

### Ineffective Assistance of Trial Counsel - Failure to Investigate

Mr. Jackson argues that his trial counsel failed to investigate the
circumstances of how the GPS device was placed on his vehicle. He argues that his
trial counsel would have discovered that his vehicle was located in an apartment
complex parking lot with a "Private Property" sign when the GPS device was placed
on it. He maintains that with this additional information, the Indiana Court of
Appeals would have found that the attenuation doctrine didn't apply and that
evidence resulting from the GPS device search would have been excluded.

To prevail on an ineffective assistance of counsel claim, a petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced him. Strickland v. Washington, 466 U.S. 668 (1984). There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. at 689. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Id. at 690–91.

The test for prejudice is whether there was a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is a probability "sufficient to undermine confidence in the outcome." Id. at 693. In assessing prejudice under Strickland "[t]he likelihood of a different result must be substantial, not just conceivable." Harrington v. Richter, 562 U.S. 86, 112 (2011). "On habeas review, [the] inquiry is now whether the state court unreasonably applied Strickland." McNary v. Lemke, 708 F.3d 905, 914 (7th Cir. 2013). "Given this high standard, even 'egregious' failures of counsel do not always warrant relief." Id.

Mr. Jackson's trial counsel moved to suppress the evidence of cocaine on Mr. Jackson's person and in his vehicle following his arrest; evidence obtained from Mr.

Jackson's cellphone; and evidence obtained from controlled buys. Direct Appeal App. 11. The trial court held an evidentiary hearing on the motion to suppress, and the parties presented the testimony of an undercover officer identified as UC 193, Detective Stump, and Officer McCluen about how they investigated Mr. Jackson. Trial Tr. 1-69. In a brief supporting the motion to suppress, trial counsel argued that the evidence obtained as a result of the traffic stop should be suppressed because the police lacked probable cause to stop Mr. Jackson's vehicle and because the evidence obtained at the traffic stop was the result of an unlawful GPS device placement and so was the fruit of the poisonous tree. Direct Appeal App. 12-22.

The trial court denied the motion to suppress, reasoning that, before the traffic stop, law enforcement observed that the operator of Mr. Jackson's vehicle failed to signal a turn two hundred feet in advance, which constituted a traffic violation. Id. at 39-45. Once law enforcement was able to identify Mr. Jackson, they had probable cause to arrest him based on his participation in controlled buys during the preceding month. Id. The lawful arrest authorized law enforcement to perform a search incident to arrest, in which they found heroin and marijuana on Mr. Jackson's person. Id. Based on the presence of drugs on Mr. Jackson's person and a dog sniff, law enforcement had probable cause to believe that the vehicle had more drugs, which authorized them to search the vehicle. Id.

The trial court acknowledged the U.S. Supreme Court's then-recent holding in U.S. v. Jones, 565 U.S. 400 (2012), and agreed that the placement of the GPS device on Mr. Jackson's vehicle constituted an illegal search and that evidence obtained as

7

a result of the GPS device should be excluded. Id. But the trial court found that law enforcement didn't obtain any material evidence as a result of the GPS device. Id. Law enforcement learned that Mr. Jackson had traveled to and from Chicago, but they had probable cause to stop his vehicle based on his earlier known involvement in controlled buys and based on the observed traffic violation. Id. The trial court concluded, "[T]he evidence [Mr. Jackson] seeks to suppress was discovered irrespective of the GPS device and is thus admissible."[1] Id.

The Indiana Court of Appeals rejected the argument regarding the GPS device on different grounds. ECF 40-5. Unlike the trial court, the appellate court assumed that "the police relied upon the GPS device to illegally pinpoint Jackson's location" but found the evidence obtained as a result of the arrest was admissible due to its attenuated relationship with the GPS device. Id. The appellate court found that the short span of time between the reliance on the GPS device and the traffic stop weighed in favor of exclusion. Id. The appellate court then considered the presence of intervening circumstances and found that the traffic violation, Mr. Jackson's suspicious conduct following the traffic stop, and Mr. Jackson's earlier involvement with controlled buys were significant intervening circumstances weighing against exclusion. Id. Lastly, the appellate court considered the purpose and flagrancy of the misconduct and observed that when the GPS device was planted in March 2011, the

---

[1] The trial court didn't engage with the testimony indicating that law enforcement decided to arrest Mr. Jackson after tracking him on the GPS device and deducing that he was returning from Chicago to Elkhart with a shipment of drugs. The police officer who stopped Mr. Jackson waited in a church parking lot that he anticipated that Mr. Jackson would pass based on GPS data. Trial Tr. 47-51.

U.S. Supreme Court hadn't decided <u>U.S. v. Jones</u> and that the Seventh Circuit had held that GPS tracking didn't constitute a search. <u>Id.</u>

At the post-conviction stage, the Indiana Court of Appeals rejected the argument that trial counsel failed to investigate the GPS device. ECF 40-12 at 9-11. The appellate court outlined trial counsel's substantial efforts to suppress evidence obtained from Mr. Jackson's arrest. <u>Id.</u> The appellate court further found a lack of prejudice given the trial court's ruling that the evidence obtained as a result of the arrest was obtained "irrespective" of the GPS device. <u>Id.</u>

This can't find that the state courts made an unreasonable determination on this claim. The gist of Mr. Jackson's argument is that the placement of the GPS device on his vehicle was unlawful for the additional reason that his vehicle was parked in an apartment complex parking lot with a "Private Property" sign when the GPS device was planted. According to Mr. Jackson, law enforcement's entry onto the parking lot constituted an additional violation to his right to privacy that could have altered the Indiana Court of Appeals' analysis on direct appeal and, specifically, the consideration of the flagrancy of official misconduct.

The record lacks any evidence relating to the location of the vehicle when the GPS device was planted.[2] Further, even assuming Mr. Jackson's vehicle was in his apartment parking lot, Mr. Jackson couldn't show prejudice because individuals have

---

[2] To Mr. Jackson's credit, he tried to subpoena the testimony of law enforcement on this topic at the post-conviction stage, but the Indiana courts rejected these attempts finding that Mr. Jackson was improperly seeking to relitigate the suppression argument raised on direct appeal and that the res judicata doctrine precluded him from doing so. ECF 40-12 at 6-8.

no expectation of privacy in a common area that is shared with other tenants. See Kosyla v. City of Des Plaines, 256 Fed. Appx. 823, 825 (7th Cir. 2007) ("Kosyla did not have a reasonable expectation of privacy in the parking lot, which is a common area that she shares with other tenants."); U.S. v. Villegas, 495 F.3d 761, 769 (7th Cir. 2007) ("Under the facts of this case, Mr. Villegas clearly had no legitimate expectation of privacy in the common hallway of the duplex."); U.S. v. Jones, 893 F.3d 66, 71 (2d Cir. 2018) ("Jones had no heightened expectation of privacy in a vehicle parked in a multi-family parking lot."). Law enforcement couldn't have violated Mr. Jackson's right to privacy by venturing into the apartment parking lot, so no amount of investigation on this factual issue would have been likely to change the outcome of the attenuation analysis. Because Mr. Jackson hasn't demonstrated prejudice, the claim that trial counsel failed to investigate the placement of the GPS device isn't a basis for habeas relief.

### Ineffective Assistance of Trial Counsel -- Failure to Object
### under the State Constitution

Mr. Jackson argues that his trial counsel failed to make a cogent argument that the GPS device evidence should have been excluded under Article I, Section 11 of the Indiana Constitution. He maintains that had trial counsel done so, the argument would have been preserved for appeal and that he would have prevailed on appeal given that, at the time of his appeal, Indiana courts had declined to incorporate the federal attenuation doctrine into Indiana constitutional law.

10

Article I, Section 11 of the Indiana Constitution provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

Under this provision of the Indiana Constitution, Indiana courts apply the Litchfield test. Watkins v. State, 85 N.E.3d 597, 601 (Ind. 2017). "Under the Litchfield test, we assess reasonableness under the totality of the circumstances, balancing 1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs." Id. During the pendency of Mr. Jackson's direct appeal, the prevailing law was that the federal attenuation doctrine[3] didn't apply under the Indiana Constitution. See Wright v. State, 108 N.E.3d 307, 317 (Ind. 2018) (overturning longstanding precedent to hold that the federal attenuation doctrine applies under the Indiana Constitution).

At a pre-trial evidentiary hearing, an undercover officer testified that the GPS device was placed on Mr. Jackson's vehicle after his involvement in two controlled buys during March 2011. Trial Tr. 36. Law enforcement placed the GPS device on the vehicle after seeing Mr. Jackson's father drive the vehicle and based on information from confidential sources that the vehicle was used to deliver drugs from Chicago. Id.

---

[3] Under the federal attenuation doctrine, "Evidence is admissible when the connection between unconstitutional police conduct and the evidence is remote or has been interrupted by some intervening circumstance, so that the interest protected by the constitutional guarantee that has been violated would not be served by suppression of the evidence obtained." Utah v. Strieff, 579 U.S. 232, 238 (2016).

at 35. The GPS device provided the location of specific house where it appeared that Mr. Jackson had obtained drugs. Id. at 37.

In his brief in support of the motion to suppress, Mr. Jackson's trial counsel argued that the use of the GPS device was unreasonable under the Indiana Constitution by incorporating his argument that the evidence should have been excluded under the federal fruit-of-the-poisonous-tree doctrine. Direct Appeal App. 19. The trial court rejected this argument, stating, "Defendant's assertion that the GPS device also violated Article I, Section 11 of the Indiana Constitution, although unsupported by cogent argument or citation to authority, is rendered moot given the United States Supreme Court ruling in Jones." Id. at 44-45.

At the post-conviction stage, the Indiana Court of Appeals found that trial counsel's failure to make a cogent argument under the Indiana Constitution didn't prejudice Mr. Jackson. ECF 40-12 at 11-12. The appellate court observed that the trial court found that the argument was moot and further found that no significant evidence was obtained from the GPS device. Id.

This court can't find that the state court made an unreasonable determination on this claim. As noted by the Indiana Court of Appeals, the trial court's findings that the state constitutional argument was moot and that no significant evidence was obtained from the GPS device indicate that a more thorough state constitutional argument wouldn't have changed the trial court's decision on the motion to suppress.

It's not clear that the Indiana Court of Appeals would have found the use of the GPS device unreasonable under the Litchfield test. Before placing the GPS device

on Mr. Jackson's car, law enforcement had seen Mr. Jackson in two controlled buys and so had a high degree of certainty that Mr. Jackson had committed crimes. The method of the search was intrusive in the sense that it conveyed substantial information about Mr. Jackson's public movements, but it didn't inhibit Mr. Jackson's ordinary life activities. And in March 2011, the prevailing law was that the placement of a GPS device on a vehicle wasn't considered to be a search. *See* U.S. v. Garcia, 474 F.3d 994, 997 (7th Cir. 2007) ("But GPS tracking is on the same side of the divide with the surveillance cameras and the satellite imaging, and if what they do is not searching in Fourth Amendment terms, neither is GPS tracking.").

To Mr. Jackson's point, law enforcement had an ample basis to arrest Mr. Jackson before placing the GPS device on his vehicle, so they didn't need the GPS device to arrest him. Law enforcement also needed to determine how Mr. Jackson obtained the drugs and the scope of the trafficking enterprise. *See* Hardin v. State, 148 N.E.3d 932, 947 (Ind. 2020) ("[L]aw-enforcement needs in combating drug trafficking—from individual operators to large-scale, corporate-like organizations— are great."). This need was illustrated by the police officers' testimony that the GPS device was placed on Mr. Jackson's vehicle based on information that it was used to deliver drugs and that they were able to obtain the Chicago address where Mr. Jackson got the drugs. Moreover, the Indiana appellate courts have, on at least one occasion, upheld the placement of a GPS device on a criminal suspect's vehicle under the Litchfield test, Bond v. State, 176 N.E.3d 596 (Ind. App. 2021), and the court can't find any contrary Indiana appellate cases.

The first and third <u>Litchfield</u> factors weigh in favor of law enforcement, and the use of the GPS device here is no more intrusive than that in <u>Bond</u>. Consequently, it doesn't appear that a more robust argument by trial counsel under <u>Litchfield</u> would have been likely to affect the outcome of trial or direct appeal. Therefore, this claim is not a basis for habeas relief.

<u>Ineffective Assistance of Appellate Counsel</u>

Mr. Jackson argues that his appellate counsel provided ineffective assistance by failing to argue that trial court unreasonably ordered him to serve consecutive sentences. The performance of appellate counsel is assessed using the same standards applied to trial counsel under <u>Strickland</u>. <u>Mason v. Hanks</u>, 97 F.3d 887, 892 (7th Cir. 1996). "Effective advocacy does not require the appellate attorney to raise every non-frivolous issue under the sun, of course." <u>Id.</u> at 893. "But when appellate counsel omits (without legitimate strategic purpose) a significant and obvious issue, we will deem his performance and when that omitted issue may have resulted in a reversal of the conviction, or an order for a new trial, we will deem the lack of effective assistance prejudicial." <u>Id.</u> "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." <u>Gray v. Greer</u>, 800 F.2d 644, 646 (7th Cir. 1986).

Mr. Jackson was convicted on four counts: Count I - Possession with intent to deliver heroin on March 30, 2011; Count II - Delivery of heroin on March 14, 2011; Count IV - Delivery of heroin on March 29, 2011; and Count V - Possession of

marijuana on March 30, 2011.[4] Direct Appeal App. 9-10. At sentencing, the trial court sentenced Mr. Jackson to thirty-seven years for Count I, fifteen years for Count II, fifteen years for Count IV, and one year for Count V. Trial Tr. 205-14. The trial court ordered that Count I be served concurrent with Count V and for Count II to be served concurrent with Count IV but consecutive to Count I for an aggregate sentence of fifty-two years. Id.

Appellate counsel raised only one argument on direct appeal -- that the trial court erred by admitting the evidence seized during the traffic stop. ECF 40-3. At the post-conviction stage, appellate counsel explained her strategy as follows:

> **Mr. Jackson:** Is there any strategic reason why you didn't challenge the consecutive sentence under Indiana Appellate Rule 7(b)?
>
> **Appellate Counsel:** As I sit here today, I don't know the specific strategy. I looked at all of the transcripts, and I must have decided. Because I believed the only issue that I raised was that the GPS monitoring device was put on against the Fourth Amendment of the United States Constitution as far as an unreasonable search and/or seizure. So, I may have considered that option and then researched it to see, at the time, how the appellate court was going on that. But, as I sit here today, I can't tell you what steps I particularly took in your case. I can just tell you what I generally do in an appeal.
>
> * * *
>
> **Prosecution:** Mr. Jackson is also arguing that you were ineffective cause you were aware that the State "piled on sentences" when they delayed the arrest of the petitioner to gather more evidence and that you were aware that the State sponsored the controlled buys, and the attachment of the GPS had a nexus to the ongoing investigation of Mr. Jackson; that you should have argued that consecutive sentences were

---

[4] Count III charged Mr. Jackson with delivery of heroin on March 16, 2011. The trial court dismissed this count at trial on the prosecution's motion. Trial Tr. 84.

inappropriate in light of the nature of the offense, character of the petitioner. Do you have any comment on that?

**Appellate Counsel:** Again, I would have looked at the sentence as a whole. I take into consideration the presentence investigation report. And, as I sit here today, I don't recall what his presentence investigation report looks like because I've seen a few since. So I can't say with any specificity as to his prior record, but I would have looked at all of that in basing my decision on whether or not to go after an inappropriate sentence.

**Prosecution:** To the best of your knowledge, did you handle Mr. Jackson's appeal in an appropriate manner?

**Appellate Counsel:** In my opinion, I would have swore we would have won on the issue. And then I believe it was two to three years later when that very issue came up again, and the law was changed, and now GPS units have to have a warrant in order to be attached to a vehicle.[5] I was hoping to have the same decision rendered in Mr. Jackson's appeal. However, the appellate court did not agree with me.

ECF 42-3 at 15, 20-21. On appeal, the Indiana Court of Appeals rejected this claim by crediting appellate counsel's explanation and finding that the decision to pursue only the argument regarding the GPS device was reasonable strategy. ECF 40-12 at 12-15.

This court can't find that the State court made an unreasonable determination on this claim. The record reflects that appellate counsel had a reasonable basis to believe that Mr. Jackson would prevail on the Fourth Amendment challenge to the use of the GPS device. On January 23, 2012, the Supreme Court of the United States decided <u>United States v. Jones</u>, 565 U.S. 400 (2013), which was a substantial change

---

[5] Appellate counsel likely refers to <u>Keeylen v. State,</u> 14 N.E.3d 865 (Ind. App. 2014), in which the Indiana Court of Appeals held that "absent extraordinary circumstances, a warrant is required before the police may conduct a search by placing a GPS device on a vehicle and monitoring the vehicle's movements by means of the GPS device."

of the then-prevailing law that the use GPS devices were not a search. As a result, when appellate counsel filed the appellate brief on May 3, 2013, this area of the law was ripe for further development as demonstrated by the numerous decisions that followed discussing the interplay between the holding of <u>Jones</u> and preexisting constitutional principles of criminal procedure. <u>See e.g.</u>, <u>U.S. v. Taylor</u>, 776 F.3d 513, 519 (7th Cir. 2015) (good faith exception); <u>U.S. v. Martin</u>, 712 F.3d 1080, 1082 (7th Cir. 2013) (attenuation doctrine); <u>Sidener v. State</u>, 55 N.E.3d 380, 384 (Ind. App. 2016) (standing of passengers); <u>Wertz v. State</u>, 41 N.E.3d 276, 282 (Ind. App. 2015) (automobile exception to the warrant requirement); <u>Keeylen v. State</u>, 14 N.E.3d 865, 873 (Ind. App. 2014) (whether probable cause or reasonable suspicion is required for a GPS device search). The trial court resolved the motion to suppress based on an arguably incorrect factual finding that the evidence obtained as a result of the arrest was obtained without the GPS device. And the appellate court rejected the argument based on the attenuation doctrine upon which neither the prosecution nor the trial court had relied during pretrial proceedings. Consequently, the court can't find that the state court determination that appellate counsel's focus on the evidentiary issue was a reasonable strategic decision was unreasonable.

Further, Mr. Jackson hasn't demonstrated that a challenge to the consecutive sentence as unreasonable was a clearly stronger argument. He relies on a line of cases that establish that consecutive sentences are inappropriate for convictions that arise from controlled buys. Specifically, in <u>Beno v. State</u>, 581 N.E.2d 922 (Ind. 1991), the Indiana Supreme Court discussed the sentencing issue as follows:

> Beno not only received the maximum possible sentence for each offense, but the sentences were to run consecutively. Our decision does not question a trial judge's discretion to both aggravate a sentence to its maximum amount and determine that the sentences should run consecutively. We simply hold that, in this case, such sentencing is not appropriate. Beno was convicted of committing virtually identical crimes separated by only four days. Most importantly, the crimes were committed as a result of a police sting operation. As a result of this operation, Beno was hooked once. The State then chose to let out a little more line and hook Beno for a second offense. There is nothing that would have prevented the State from conducting any number of additional buys and thereby hook Beno for additional crimes with each subsequent sale. We understand the rationale behind conducting more than one buy during a sting operation, however, we do not consider it appropriate to then impose maximum and consecutive sentences for each additional violation. If Beno, for instance, had sold drugs to different persons, or if he had provided a different type of drug during each buy, the consecutive sentences imposed might seem more appropriate. Here, however, because the crimes committed were nearly identical State-sponsored buys, consecutive sentences were inappropriate.

Beno v. State, 581 N.E.2d 922, 924 (Ind. 1991); see also Gregory v. State, 644 N.E.2d 544, 546 (Ind. 1994) ("Consecutive sentences are not appropriate when the State sponsors a series of virtually identical offenses.")

In Jones v. State, 807 N.E.2d 58 (Ind. App. 2004), the criminal defendant was charged with dealing crack cocaine in several controlled buys (Counts II-VIII) but was also charged for dealing outside of the context of a controlled buy (Count I), a transaction that predated the controlled buys. At sentencing, the trial court ordered the criminal defendant to serve the sentence for Count I consecutive to the sentences for the other counts. Id. at 62. The Indiana Court of Appeals rejected the criminal defendant's challenge to consecutive sentences under Beno and Gregory. Id. at 69-70. The appellate court reasoned that consecutive sentencing was appropriate because

18

Count I related to a dealing transaction that occurred before any controlled buy had taken place and was thus not "virtually identical" to the other counts. Id. In Williams v. State, 891 N.E.2d 621, 635 (Ind. App. 2008), the Indiana Court of Appeals extended the holdings of Beno and Gregory "to convictions arising from evidence gathered as a direct result of the State-sponsored criminal activity." In that case, the prosecution charged the criminal defendant with additional counts based on evidence obtained as a result of a residential search warrant that was obtained pursuant to evidence obtained from controlled buys. Id. at 634-35.

Mr. Jackson argues that his consecutive sentence most closely resembles that in Williams. According to Mr. Jackson, his charge on Count I arose from evidence gathered at his arrest, which was a direct result of the controlled buys. It looks to this court that Mr. Jackson's circumstances lay somewhere in between the facts of Williams and Jones. Critically, though the earliest charged incident occurred within the context of a controlled buy, the undercover officer's testimony indicated that Mr. Jackson's father was the target of this initial controlled buy but that Mr. Jackson arrived at the scene of the controlled buy with his father. Trial Tr. 15-25, 99-108. Mr. Jackson's circumstances are thus distinguishable from those presented in Beno, Gregory, Jones, and Williams, so it's not obvious how the Indiana courts would have resolved the appellate argument proposed by Mr. Jackson. Given this legal ambiguity, the court can't find that an argument challenging the consecutive sentence as unreasonable was "clearly stronger" than the argument on the suppression of evidence. Therefore, this claim isn't a basis for habeas relief.

## CERTIFICATE OF APPEALABILITY

Section 2254 Habeas Corpus Rule 11 requires the court to grant or deny a certificate of appealability. To obtain a certificate of appealability under 28 U.S.C. § 2253(c), a petitioner must make a substantial showing of the denial of a constitutional right by establishing "that a reasonable jurist could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000). For the reasons explained in this order, there is no basis for encouraging Mr. Jackson to proceed further.

For these reasons, the court GRANTS the motion to amend the traverse (ECF 48); DENIES the amended habeas corpus petition (ECF 36); DENIES a certificate of appealability pursuant to Section 2254 Habeas Corpus Rule 11; and DIRECTS the clerk to enter judgment in favor of the Respondent and against the Petitioner.

SO ORDERED on December 6, 2022

s/ Robert L. Miller, Jr.
JUDGE
UNITED STATES DISTRICT COURT